No. 9538.

THE STATE EX REL. BENJAMIN NEWGASS VS. THE CITY OF NEW ORLEANS.

A claim for reimbursement of money paid in error, even when reduced to judgment, does not arise from a contract, but from the law, and is not protected by the provision in the Federal Constitution, which prohibits States from passing laws impairing the obligation of contracts.

A State constitution when it does not conflict with that Constitution is omnipotent in its disposition and even destruction of private and social rights.

A State may divest vested rights without infringing the paramount law of the land.

A PPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

---

*Fred. D. King* and *Blanc & Butler* for the Relator and Appellee:

*A.* The obligation of the city to refund a tax illegally exacted is an obligation of contract protected by the Constitution of the United States.

1. Municipal as well as private contracts may be expressed or implied. C. C. 1780, 1797, 1809, 1811, 2292, 2293; Argenti vs. San Francisco, 16 Cal. 255, 282; 12 Wall. 12; Dillon Mun Corp. §§ 459, 938.

2. Wherever the law attaches a duty to refund money unduly exacted and paid by mistake, there results an implied *promise* to reimburse as in the case of a want of consideration. C. C. 2301, 2302; Hubbard vs. Brainard, 35 Conn. 561; Collector vs. Hubbard, 12 Wall. 12; Bradford vs. Chicago, 25 Ill. 423; Dillon, Mun. Corp. 5th Ed. §§ 459, 938; Argenti vs. San Francisco, 16 Cal. 255, 282.

3. The action in like cases is assumpsit and is *ex contractu.* Collector vs. Hubbard, 12 Wall. 12; 2 Metcalf 228; Am. Jurist, vol. 23, pp. 143, 271; Bradford vs. Chicago, 25 Ill. 423; Dillon, Mun. Corp. 3d Ed. 939, 940, 938.

4. The contract to refund money unduly exacted and paid in error is called a quasi-con" tract; so is the obligation to refund the purchase money under a void title; so is the duty to account for an estate managed by one person without the consent, as during the absence, of another; and so are the obligations of tutorship and curatorship, and yet it will scarcely be denied that all of these imply contract obligations protected by the Federal Constitution. C. C. 2293, 2305, 2301, 2302; Paul vs. Renosha, 22 Wis. 266.

5. It is the civil obligation of contracts which (the Constitution) is designed to reach; that is, the obligation which is recognized by, and *results* from, the *law* of the State in which it is made. Cooley, Const. Lim. p. 347, 5th ed.

6. The rate of taxation at the time the obligation arose, enters into and forms part of the obligation, and cannot afterwards be withdrawn to the prejudice of the obligee, without impairing the obligation of contract.

7. By Act No.—— of 1872, sec. ——, the rate of taxation was fixed at twelve and one-half mills, and to that extent relator is entitled to the exercise of the taxing power.

B. Should the relator be denied the right of contract, then he says: As the city only needs, can only use, and has only appropriated, for alimony or government, nine of the ten mill tax it levied, re'ator can be paid from the revenue derivable from the surplus mill. Acts 1884, No. 88.

1. Relator registered his judgments pursuant to Act No. 5, Ex. Sess. 1870; he accepted its remedy, and he has no other. By that act he was entitled to have his registered judgments paid from the budget revenues, subject always to the preferred claims of the city's alimony.

2. The revenue not needed, nor appropriated, nor used for alimony is the ten per cent rebate on the *whole* budget estimate; this rebate includes one mill of the ten mills tax and much more than exceeds one hundred thousand dollars per annum.

3. Relator's acceptance of the only remedy offered him, that of Act 5 of 1870, Ex. Sess., and the only means of revenue for his payment being the aforesaid rebate, he has a vested right in this exclusive remedy and in the means of payment, which cannot be divested by the legislature, under the State Constitution. Shields vs. Chase, 32 Ann. 409; Cooley, Const. Lim, p. 445; Hubbard vs. Brainard, 35 Conn. 563; Dillon Mun. Corp. 3d ed § 845; Memphis vs. United States, 97 U. S. 294; Folsom case, 32 Ann. 714.

4. The attempt of the State by Act 88 of 1884 to wrest from creditors the said revenue, by appropriating it for unadopted and problematic improvements, occurring after the acquisition of said vested rights, must be disregrrded and held void, as unconstitutional. See authorities cited above.

*W. H. Rogers,* City Attorney, for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The relator, who is a judgment creditor of the city, claims that an appropriation be made and revenue provided for his benefit in the next budgets or tax and revenue levies of the city,

and in all future budgets and levies until he be fully paid in capital, interests and costs.

He charges that the judgments in his favor have, as their consideration, amounts paid for licenses illegally exacted prior to 1874; that the obligation of the city to reimburse springs from a *contract* and cannot be impaired by the State; that the rate of taxation at the time was fixed at 12½ mills, which would have sufficed, but that the same has been since reduced to 10 mills.

He further argues that, if his claim is not based on a contract, the obligation of which cannot be impaired, he is entitled to be paid out of part of the 10 mills, only ninetenths of which constitutes the alimony of the city, the remaining tenth the *reserve fund*, not forming part of it and being a municipal asset out of which he can be satisfied.

The defense is that the judgments are not based on contract obligations; and that the same are payable only out of the usual and ordinary municipal revenues, which are limited to ten mills, which are necessary for the alimony of the city.

From an adverse judgment, the corporation has appealed.

## I.

No principle is better recognized by law and jurisprudence than that he who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it, and that he who has thus paid through mistake, believing himself a debtor, may reclaim what he has paid.   R. C. C., 2301-2.

This principle governs both natural and artificial persons.

It does not, however, follow that the right to claim reimbursement and the obligation to refund arise from a contract, express or implied, which is protected from impairment or invasion by the Constitution of the United States, which is invoked as a shield in the present controversy.

The contracts designed to be protected are such by which perfect rights, certain, definite, fixed private rights, are vested.   Butler vs. Penn., 10 How. 402.

There is a distinction between those rights which the law gives to, or obligations which it imposes upon, persons in certain relations, merely in carrying out its own views of policy and independently of any stipulations which the parties may have made, and those rights which the law itself, even in carrying out some matter of general policy,

authorizes to be made the subject of express contract between the parties.

In the former case, the rights being entirely derived from the law and not from the contract, laws changing them are not within the prohibition; but, in the latter case, although the law authorized the rights to be acquired, yet it authorized them to be acquired only by contract and when thus acquired the contract is within the pale of the protection.

"The doctrine of implied municipal liability," says Mr. Chief Justice Field, in a California case, invoked by relator and which was subjected to a thorough examination," applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same.

"If the city obtain money by mistake, or without authority of law, it is her duty to refund it, *not from any contract*, entered into by her on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial," etc. The *italics* are ours.

The obligation to refund the money illegally received by the city, for the licenses subsequently declared to be illegal, does not arise from any contract between the city and the parties paying, any more than does the obligation to repair damage caused by the fault of another.

In the case of Folsom vs. New Orleans, 32 Ann. 714, decided by the present Court, whose conclusions were affirmed by the Supreme Court of the United States, we had occasion to review fully the principles and the jurisprudence on the question of the protection which the Federal Constitution awards to contracts by prohibiting States from impairing the obligations of the same, and following in the line of well established precedents, we held that the right to claim damages, occasioned by the commission of a tort, even when reduced to judgment, did not arise from a contract and was not, therefore, within the constitutional protection.

We further declared that a State Constitution, when it does not conflict with that of the United States, is omnipotent in its disposition and even destruction of private and social rights, and that a State may divest vested rights, without infringing the paramount law of the land.

It is manifest in the case at bar, that as the right to claim reimbursement does not arise from any contract, but is recognized by law only, the relator has vainly invoked the constitutional protection.

## II.

The relator, however, claims that, if his case does not present the features of a contract shielded from invasion, he had a vested right which could not be divested by the reduction of the *quantum* of taxation.

This may well be otherwise, but were it not so, the relator would not, on that account, be entitled to be paid out of the tenth remaining; after deduction of the nine-tenths, from the ten mills taxation, authorized by the Constitution, for the obvious reason that he has set forth. and established no special valid ground, on which to predicate a diversion of that tenth from the object contemplated and appropriation made by the legislature under Act 88 of 1884, and to justify a payment in full to him, by preference over other municipal creditors. who may have as well founded claims against the city.

It is, therefore, ordered and decreed, that the judgment appealed. from be reversed and that plaintiff's demand be rejected with costs.

Rehearing refused.